UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PETER A. PIETROSKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  1:25-cv-00425-SDN |
| CARRINGTON MORTGAGE | ) |
| SERVICES, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S PENDING MOTIONS**

Plaintiff Peter A. Pietroski is a mortgagor alleging unlawful debt collection practices on the part of his mortgage servicer, Defendant Carrington Mortgage Services, LLC ("Carrington"). Before the Court are: (1) Carrington's first Motion to Strike and Motion to Dismiss, ECF No. 6, portions of Mr. Pietroski's original complaint, ECF No. 1; and (2) Carrington's renewed Motion to Strike, ECF No. 8, portions of Mr. Pietroski's first amended complaint ("FAC"), ECF No. 7. For the following reasons, both motions are **DENIED**.

## I. Background[1]

In 2007, Mr. Pietroski[2] acquired property in Winthrop, Maine (the "Property"), and he has resided there ever since. FAC ¶¶ 6, 7. In 2009, he obtained a mortgage loan on the Property, FAC ¶ 15, and this action arises from a long-running dispute over that loan. Shortly after obtaining the mortgage loan, Mr. Pietroski became unable to afford his

---

[1] These facts are derived from the first amended complaint. ECF No. 7.

[2] While Mr. Pietroski is the sole named plaintiff in this action, the first amended complaint alleges he and his partner, Francine Fuller, are co-borrowers on the mortgage loan and joint legal owners of the Property. *See* ECF No. 7. For ease of reference, the Court refers only to Mr. Pietroski in this Order.

1

monthly payments. FAC ¶ 17. Sometime thereafter, Mr. Pietroski requested a loan modification from GMAC Mortgage, LLC ("GMAC"), the then-servicer and owner of the loan, but GMAC rejected his request, and the loan went into default. FAC ¶¶ 18, 53.

### A. Loan Litigation History

Since the 2010 default, the mortgage loan has been the subject of multiple proceedings in both federal and state court. In 2011, GMAC commenced a foreclosure action against Mr. Pietroski in Maine state court, but it dismissed the suit the following year. FAC ¶ 19. In 2013, GMAC again sued Mr. Pietroski in Maine state court to initiate foreclosure; in 2015, GMAC dismissed the second foreclosure action due to standing defects. FAC ¶¶ 20, 22.

Following a series of assignments, WVMF Funding, LLC ("WVMF") became the owner of the mortgage loan in 2017. FAC ¶¶ 23, 24. In February of the following year, WVMF initiated a third foreclosure action against Mr. Pietroski in Maine state court. FAC ¶¶ 29–31. In May 2020, the state court entered judgment for Mr. Pietroski. FAC ¶ 34. In June 2020, WVMF filed a motion to alter or amend the judgment. FAC ¶ 35. Around October 2020, while the motion was pending, WVMF sold the mortgage loan to Wilmington Savings Fund, FSB ("Wilmington"), as trustee for Stanwich Mortgage Loan Trust I. FAC ¶ 36. Wilmington was not substituted as the plaintiff in the state court action. FAC ¶ 37. In March 2021, the state court denied the motion to alter or amend the judgment. FAC ¶ 38. The judgment in Mr. Pietroski's favor became final in July 2021. FAC ¶ 39.

After the state court ruled in his favor, Mr. Pietroski sought a declaratory judgment from this Court in October 2021 solidifying that he held title to the Property unencumbered by the mortgage. FAC ¶ 43. Both WVMF and Wilmington were named as

2

defendants in the declaratory action. FAC ¶ 45. Wilmington filed a counterclaim seeking, among other things, a declaratory judgment that the mortgage loan was still valid and Wilmington owned the mortgage. FAC ¶¶ 46–48. In December 2024, following cross motions for summary judgment, this Court entered an order granting summary judgment in favor of Mr. Pietroski. FAC ¶¶ 49–50. In so doing, the Court declared: (1) the mortgage is unenforceable; and (2) Mr. Pietroski holds title to the Property free and clear of the mortgage encumbrance. FAC ¶ 51. Wilmington and WVMF appealed; as of early March 2026, the appeal remains pending. FAC ¶ 52.

### B. Loan Servicer Conduct

Shifting back to 2020—in October of that year, Carrington began servicing the mortgage loan. FAC ¶¶ 53, 62. Around that time, Carrington mailed a letter to Mr. Pietroski notifying him that it had become the loan's servicer. FAC ¶ 76. By that point, the loan had been in default for around ten years. Also in October 2020, Carrington began mailing "Monthly Mortgage Statements" to Mr. Pietroski. FAC ¶ 62. These communications asserted that monthly principal, interest, and escrow payments were owed on the mortgage loan. *Id.* Through June 2021, these monthly statements were mailed directly to Mr. Pietroski. FAC ¶ 77. He alleges this correspondence was improper because Carrington possessed knowledge of the declaratory judgment in Mr. Pietroski's favor and knew that he was represented by an attorney in the foreclosure matter. *See* FAC ¶¶ 73, 77, 91. In addition, Mr. Pietroski contends these monthly statements, which threatened potential foreclosure and acceleration, were false or misleading because they did not accurately describe Carrington's legal rights. *See* FAC ¶¶ 89–91. After June 2021, these monthly statements were mailed to Mr. Pietroski's counsel. FAC ¶ 89.

3

Additionally, in May 2022, Mr. Pietroski alleges Carrington directly mailed him a "Notice of Right to Cure" letter, which stated $16,252.10 was required to cure the default and warned that failure to cure could result in acceleration of the debt and sale of the property. FAC ¶ 86. Mr. Pietroski further alleges that on eight occasions between June 11, 2021, and September 13, 2025, Carrington delivered letters by personal carrier to the Property. FAC ¶ 78. These letters identified the mortgage loan account number, requested Mr. Pietroski contact Carrington to seek a resolution for the default, and warned that Carrington might pursue the options available to it if Mr. Pietroski did not make contact. *Id.* Mr. Pietroski contends these deliveries occurred despite Carrington's knowledge that he was represented by counsel and persisted after Carrington received written objection from his attorneys requesting that it cease directly communicating with Mr. Pietroski and physically entering the Property. FAC ¶¶ 80–91. Mr. Pietroski further alleges that at least some of the letters delivered by personal carrier occurred after Carrington sent correspondence to Mr. Pietroski's attorneys acknowledging that its system had been updated to cease telephone and written communication with Mr. Pietroski except as required by law. FAC ¶¶ 87–88.

### C. Procedural Posture

Against that backdrop, Mr. Pietroski commenced this action against Carrington in August 2025. ECF No. 1. On September 25, 2025, Carrington filed its first Motion to Strike and Motion to Dismiss Count IV of the complaint. ECF No. 6. Two weeks later, Mr. Pietroski filed his first amended complaint. ECF No. 7. And in late October 2025, Carrington renewed its Motion to Strike the first amended complaint. ECF No. 8.

Mr. Pietroski's first amended complaint asserts five counts related to Carrington's communication in connection with debt collection, alleging violations of: (1) 15 U.S.C.

§ 1692c—communications with Plaintiff while he was represented by counsel (Count I); (2) 32 M.R.S. § 11012(1)(B)—improper communication with Plaintiff (Count II); (3) 15 U.S.C. § 1692d—harassment or abuse (Count III); (4) 32 M.R.S. § 11013(1)—harassment or abuse (Count IV); and (5) 14 M.R.S. § 6113—breach of the Maine mortgage servicer duty of good faith (Count V). *See* ECF No. 7 at 20–25.

## II.  Discussion

### A. First Motion to Strike and Motion to Dismiss Original Complaint

Under Federal Rule of Civil Procedure 15, a "party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Here, Mr. Pietroski was entitled to amend his complaint once as matter of course within the twenty-one days after Carrington served its first Rule 12 motions; because Mr. Pietroski filed his amended complaint within that time period, amendment was proper and the amended complaint becomes "the operative complaint without judicial intervention." *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 95 (1st Cir. 2008); *see Kolling v. Am. Power Conversion Corp.*, 347 F.3d 11, 16 (1st Cir. 2003) (the "amended complaint completely supersedes [the] original complaint, and thus the original complaint no longer performs any function in the case"); *Howard v. IDEXX Distrib. Inc.*, No. 2:20-cv-00079, 2020 WL 4435093, at *1 (D. Me. July 5, 2020), *report and recommendation adopted*, 2020 WL 4432367 (D. Me. July 31, 2020) (recommending motion to dismiss be deemed moot when "plaintiffs filed an amended complaint as of right in response to that motion, superseding the original complaint"). Accordingly, Carrington's first Motion to Strike and Motion to Dismiss, ECF No. 6, the original complaint, ECF No. 1, are DENIED AS MOOT.

## B. Renewed Motion to Strike First Amended Complaint

Before responding to a pleading, a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A matter is immaterial if it has no bearing on the parties' claims for relief or defenses. *McGlauflin v. RCC Atl. Inc.*, 269 F.R.D. 56, 58 (D. Me. 2010). Similarly, an impertinent matter is that which does not pertain to, and is not necessary to resolve, the issues in question. *U.S. Bank Tr., N.A. as Tr. for LSF9 Master Participation Tr. v. King*, No. 1:19-cv-00119, 2020 WL 3064423, at *1 (D. Me. June 9, 2020). If the challenged material is "so connected with the subject matter of the suit that it might be deemed to present a question of law or fact that the district court is obligated to hear and determine," the Court cannot strike it as impertinent. *Burnett v. Ocean Props. Ltd.*, No. 2:16-cv-00359, 2017 WL 1331134, at *7 (D. Me. Apr. 11, 2017) (quoting *McGlauflin*, 269 F.R.D. at 58). Moreover, motions to strike are generally disfavored and should be denied unless "it is clear that the challenged matter has no possible bearing on the parties' dispute." *McKay v. Fay Servicing, LLC*, No. 1:23-cv-00361, 2024 WL 3738302, at *3 (D. Me. Aug. 9, 2024). Ultimately, the decision to deny a motion to strike lies within the Court's sound discretion. *See Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).

Pursuant to Rule 12(f), Carrington moves to strike various portions of the first amended complaint. Specifically, Carrington requests the Court strike paragraphs 17, 18–25, 30–31, 33–42, 46–52, 63–64, 67–68, 70–72, and 92, contending the allegations contained therewithin are "irrelevant." *See* ECF No. 8 at 3–4. Carrington asserts these challenged paragraphs are not at issue in the instant case, concern events that predate Carrington servicing Mr. Pietroski's loan, or a combination thereof. *See id.* at 2–4. Mr. Pietroski maintains the allegations found in these thirty-six paragraphs are relevant to his

6

asserted claims because they provide crucial background information for his various causes of action and requested remedies. ECF No. 10 at 2–5.

The Court agrees with Mr. Pietroski. Carrington fails to show how the paragraphs it moves to strike have "no possible bearing on the parties' dispute." *See McKay*, 2024 WL 3738302, at *3. The challenged paragraphs describe the factual history of the mortgage loan's origination and transfer of servicing and ownership rights, *see* FAC ¶¶ 18–25, 36; Mr. Pietroski's default and attempts to address the delinquency, *see* FAC ¶¶ 17–21; and the series of foreclosure actions and related court proceedings that concern the enforceability of the mortgage and the legal status of Mr. Pietroski's purported debt before and during Carrington's involvement, FAC ¶¶ 19—20, 22–25, 30–31, 33–42, 46–52, 63–64, 67–68, 70–72, and 92. These "challenged allegations provide relevant background information" leading up to the filing of the instant case and are helpful to understanding and assessing Mr. Pietroski's asserted claims. *Mr. Catling v. York Sch. Dep't*, No. 2:19-cv-00110, 2019 WL 3936386, at *5 (D. Me. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 4455986 (D. Me. Sept. 17, 2019). Moreover, Carrington fails to demonstrate how it will be prejudiced by the inclusion of any of the challenged factual allegations. *See Mr. Catling*, 2019 WL 3936386, at *5 ("Rule 12(f) motions are not typically granted without a showing of prejudice to the moving party." (quoting *Sheffield v. City of Bos.*, 319 F.R.D. 52, 54 (D. Mass. 2016)); *Wilmington Tr., Nat'l Ass'n v. Howe*, No. 2:21-cv-00278, 2022 WL 1522247, at *4 (D. Me. May 13, 2022).

For these reasons, the Court DENIES Carrington's renewed Motion to Strike. ECF No. 8.

### III.     Conclusion

For the foregoing reasons, Carrington's first Motion to Strike and Motion to Dismiss, ECF No. 6, the original complaint, ECF No. 1, are **DENIED AS MOOT**, and Carrington's renewed Motion to Strike, ECF No. 8, the first amended complaint, ECF No. 7, is **DENIED**.

**SO ORDERED.**

Dated this 10th day of March, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**